```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,

                                      MEMORANDUM AND ORDER
         -against-                      19-CR-582 (DRH)

FRANCES CABASSO, et. al.,

              Defendants.
------------------------------X
```

APPEARANCES ON THE MOTION:

For the Government:
    Acting United States Attorney
    Mark J. Lesko
    100 Federal Plaza
    Central Islip, New York
      By: Claire S. Kedeshian, A.U.S.A.

For Defendant Frances Cabasso:
    Bryan Ha
    455 Tarrytown Road, # 1244
    White Plains, New York 10607

    Law Offices of Kenneth J. Kaplan, P.C.
    260 Madison Avenue, 16th Floor
    New York, New York 10016
      By Kenneth J. Kaplan, P.C.

For Non-Parties Potential Claimants
to the Yacht, Ishine Florida Yachting, LLC and
Dr. Eric Weinstein

    Tucker Levin, PLLC
    230 Park Avenue, Suite 440
    New York, New York 10169
      By Duncan P. Levin, Esq.

HURLEY, Senior District Judge

      By notice of motion dated January 15, 2021, the government seeks an order directing the interlocutory sale of an approximately seventy foot luxury recreational yacht named "Tranquillo," (hereinafter the "Yacht" or "vessel"), registered

in the name of the Adventura Group, Inc., an entity owned and controlled by the defendant Frances Cabasso[1], pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

The Yacht was seized by United States Marshal's Service on November 7, 2019, pursuant to a court authorized seizure warrant.  The subject asset is targeted for forfeiture in the indictment.

### Government's Position

In requesting the vessel's interlocutory sale, the government argues:

> As of December 31, 2020, approximately $56,625.85 in maintenance and storage costs relating to the Yacht have accrued.  These expenses . . . will continue to accrue until there is a disposition of this asset.  Further, in addition to these reoccurring expenses, in November 2019, around the time the Yacht was seized, the United States

---

[1] Although the Tranquillo is registered in the name of the Adventura Group, Inc., it appears that its ownership is equally divided between Ms. Cabasso, through her corporate entity, and Dr. Eric Weinstein through another corporation.  See Dec. 22, 2020 Letter from Ms. Cabasso's attorney, Kenneth J. Kaplan, Esq. (Doc. # 165) at 1.

By letter dated December 17, 2020, filed as a motion without the necessary motion papers, Dr. Weinstein, and his corporation, requested the interlocutory sale of the Tranquillo contending, inter alia, that the vessel "is quickly depreciating and deteriorating."  Dec. 17, 2020 Letter from Duncan P. Levin, Esq. (Doc # 163) at 1. That letter, however, does not provide information addressing the deficiencies discussed herein.

2

>Marshals Service ("USMS") was informed that the Yacht was estimated to have a value of approximately $649,000. An appraisal received by the USMS, dated June 23, 2020, estimated the value of the Yacht to be approximately $625,000. In short, over an approximate eight month period, it appears that the Yacht has decreased $24,000 in value while the maintenance and storage costs are continuing to be incurred.
>
>In these circumstances where the asset is depreciating and large expenses are continuing to be incurred with respect to the storage and maintenance of the asset, F. R. Crim. P. Rule 32.2(b)(7) and Supplemental Rule G(7)(b) authorize the government, pursuant to a court order, to proceed with an interlocutory sale in order to prevent further dissipation and to preserve the value of the forfeitable Yacht pending resolution of the criminal proceedings.

(Gov's's Mem. in Supp. at 1-2.)

### Defendant Frances Cabasso's Position

In opposing the relief sought, defendant Frances Cabasso takes the position that the government has not met its burden of showing that an interlocutory sale is warranted. Among other things, she challenges the proposition that the vessel has lost post-seizure, and will continue to lose, significant value while the case awaits resolution. She proffers that the bulk of the vessel's depreciation had already occurred by the time the then seven year old Yacht was "purchased in December 2013 for $726,043.50. In the seven years since the Yacht has not depreciated much, if at all." (Frances Cabasso's Mem. in Opp. at 4.) In essence, Cabasso views the "government's claim that the

3

Yacht's value decreased by $24,000 in the eight months after it was seized" as unsubstantiated. Id. at 5. And as to the associated storage and maintenance costs, those, I am told, could be readily lowered and that the vessel was in excellent condition when seized thus rendering the supposed need for prophylactic repairs problematic.

Thus far, I have endeavored to set forth in broad strokes the nature of the dispute and some of the positions advanced by the government and by Frances Cabasso, absent any comments about the concomitant merits of those positions. But her next objection – now to be discussed — is pivotal to a resolution of the present motion causing the other points raised to be academic at least at this juncture. That point concerns the government's failure to provide anything other than largely conclusory comments about the vessel's market value at different points in time in support of its position of diminishing value and about the ongoing costs to the government of keeping the Yacht as being excessive. Following a discussion of the applicable law, the fundamental inadequacies in this portion of the government's submission will be addressed.

## Discussion

1. Applicable Law

Criminal forfeiture proceedings are governed by Fed. R. Crim. P. Rule 32.2. That Rule provides in pertinent part:

4

"<u>Interlocutory Sale</u>.  At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of <u>Civil</u> Procedure may order the interlocutory sale of property alleged to be forfeitable."  Fed. R. Crim. P. Rule 32.2(b)(7)(emphasis added).  Therefore, the federal rules governing interlocutory sales of forfeitable property, whether they are being pursued in the context of a criminal forfeiture (assets of defendant) or civil forfeiture (<u>in rem</u> action against a <u>res</u>), are the same.

> Supplemental Rule G(7)(b) reads:
>
> (i) <u>Order to Sell</u>.  On motion by a party . . . , the court may order all the property sold if:
>  (A)   the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
>  (B)   the expense of keeping the property is excessive or is disproportionate to its fair market value;
>   . . . or
>  (D)   the court finds other good cause.
> (ii) <u>Who Makes the Sale</u>.  A sale must be made by the United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates.
>   . . . .
> (iv) <u>Sale Proceeds</u>.  Sale proceeds are a substitute <u>res</u> subject to forfeiture in place of the property that was sold.  The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.

Supplemental Admiralty and Maritime Claims Rule G(7)(b).

To obtain the interlocutory sale it seeks, the government needs to establish that the vessel, if retained pending resolution of the underlying criminal action, is "at risk

of deteriorating" or "the expense of keeping the property is excessive or disproportionate to its fair market value."  Supp. R. G(7)(b)(i)(A) or (B).

    2.  <u>Fundamental Flaw in the Government's Submission</u>

To the extent the vessel is losing market value at a significant rate that would certainly seem to fall within the purview of the term "deterioration" given the purpose of the Rule.  But to make such a determination the Court needs reliable information from persons with the requisite expertise to voice an opinion as to Yacht's market value at the beginning and at the end of the specific period.  It is not enough to simply proffer that "in November 2019, around the time the Yacht was seized, the United States Marshal's Service ("USMS") was informed that the Yacht was estimated to have a value of approximately $649,000. An appraisal received by the USMS, dated June 23, 2020, estimated the value of the Yacht to be approximately $625,000.  In short, over an approximate eight month period, it appears that the Yacht has decreased $24,000 in value while the maintenance and storage costs are continuing to be incurred.  (Gov't's Memo. in Supp. (Doc # 167-2)).  That statement invites the following question: what are the expert credentials, if any, of the person who "informed" the USMS of the $649,000 figure?  Absent that information, the number provided is essentially meaningless.  The same may be said of the $625,000 figure, as well as the $24,000

6

differential. And as to maintenance costs while the vessel sits in dry dock, the fair market value of the vessel, as provided by an appropriately credentialed marine appraiser, is needed to gauge whether those costs are disproportionate or excessive based on the worth of the Yacht.

## Conclusion

The current application's failure to include the type of information referenced above per se precludes the granting of the requested relief. Accordingly the government's motion for an interlocutory sale of the Tranquillo pursuant to Rule 32.2(d)(7) of Fed. R. Crim. P. and Supplemental Rule (G)(7)(b) is denied albeit without prejudice. As earlier noted, the other issues raised by the parties are academic at this point.

Should the government elect to move again for the same relief, their motion papers should include copies of any referenced appraisals along with the credentials of the preparers.

SO ORDERED.

Dated: April 6, 2021
       Central Islip, New York

                                    s/ Denis R. Hurley
                                    Denis R. Hurley
                                    United States District Judge