# EXHIBIT A

**Affirmation of Samuel M. Braverman, counsel for Aventura**

# EXHIBIT A

**Affirmation of Samuel M. Braverman, counsel for Aventura**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

――――――――――――――――――――――――― X
UNITED STATES OF AMERICA,

        against.                                 Indictment No. CR 19 582 (DRH)(ARL)

AVENTURA TECHNOLOGIES, INC.,
et al.,

        Defendants.

――――――――――――――――――――――――― X

**AFFIRMATION OF SAMUEL M. BRAVERMAN, ESQ. IN SUPPORT OF DEFENDANT, AVENTURA TECHNOLOGIES, INC.'S MOTION FOR RELEASE OF SEIZED FUNDS FOR BENEFIT OF DEFENDANT AVENTURA AND CO-DEFENDANT EMPLOYEES LEGAL DEFENSE**

Samuel M. Braverman, attorney for Defendant Aventura Technologies, Inc., submits this Affirmation on behalf of and in support of Defendant Aventura's Motion for Release of Seized Funds, and in reply to the Government's letter brief in opposition, and states as follows:

1. I am an attorney licensed to practice law in New York and before this Court and I am the attorney of record for Defendant Aventura Technologies, Inc. (hereinafter referred to as "Aventura"). I make this Affirmation in support of Aventura's Motion for Release of Seized Funds [ECF Doc. 211].

2. Aventura and several individual defendants who are employees of Aventura are charged by indictment with money laundering conspiracy and related charges.

3. On November 7, 2019, Aventura suffered a seizure by the Government of all of its corporate financial assets held in banks pursuant to an order of a fellow magistrate of this Court. This amount exceeded $1.8 million and was the total cash assets of Aventura.

4. This seizure also included virtually all of the corporate business records and computers of Aventura. The government has made discovery productions over the last year totaling millions of documents, with another production of potentially hundreds of thousands of pages to be made again this week. The government is also in possession of dozens of electronic devices which it has offered to return as not containing "material" evidence and therefore no longer needed by the government. Aventura cannot speculate how many millions of documents remain on these "non-material" electronic devices and whether there is any exculpatory material on them.

5. Following the seizure by the government, Aventura was unable to access its corporate records and computers in the possession of the government and has therefore been unable to conduct business or collect its outstanding accounts receivables.

6. As a result, all of Aventura's business relationships have been terminated and its work has stopped.

7. As was alleged in the original moving papers, the government has contacted and instructed Aventura customers not to pay their invoices due and owing to Aventura although requested by Aventura. I was informed by counsel for a delinquent client of Aventura that he was personally informed by an agent of the United States to not pay Aventura's invoices. I noted in a footnote of my first moving papers that I was assured by government counsel that no attorney or agent of the United States instructed any customer of Aventura to not pay or to stop payment already made of any Aventura invoice.

8. Attached as Exhibit B are three pages of checks sent by Trimble Inc., a customer of Aventura, with the related invoice for services provided. Attached as Exhibit C is a letter from Matthew Schwartz, Boies Schiller Flexner counsel for Trimble (and a former

Assistant United States Attorney in this District) stating that "following the filing of criminal charges against [Aventura], Trimble was advised to stop payment on the outstanding invoices by federal authorities." Aventura has filed suit against Trimble for non-payment of contracts and accounts stated, and Trimble has there furthered its assertion that it was directed by federal authorities to not make payment on the outstanding invoices and was therefore authorized to stop payment on more than $200,000 of checks sent to Aventura.

9. Aventura currently does not have the funds to pay for counsel in its own defense. Attached as Exhibit D is a bank statement showing that Aventura has a single bank account with a balance of approximately $149.05 as of December 31, 2021. Undersigned counsel is currently holding $0 funds for Aventura in its trust account and has an outstanding balance for legal work due.

10. Upon information and belief Aventura has no other financial accounts of any kind from which to fund the payment of undersigned counsel or counsel for any of its employees charged as co-defendants in this case. Any potential recovery of accounts receivable has been thwarted by interference by agents of the United States.

11. Jack and Frances Cabasso, defendants in this action and owners of Aventura, have exhausted their finances in defense of the corporation and themselves. Nor do they have any assets which can be leveraged to pay for legal expenses. Attached as Exhibit E is a bank statement of Jack Cabasso showing a balance of $1,329.58.

12. Upon information and belief, at the time of the seizure, Aventura had numerous debts due for payroll, trade and other payables and day-to-day expenses, exceeding $100,000, which remain unpaid. Records in support of this claim are in possession of the government.

13. Attached as Exhibit F is a certificate from the Delaware Secretary of State confirming that Aventura is a Delaware corporation. A Delaware corporation may conduct any business authorized in the State of Delaware, consistent with its articles of incorporation, and thus may spend its funds in any lawful manner including the payment of legal expenses for the corporation and its employees if the corporation so chooses. (The government previously provided a copy of the Aventura bylaws with its letter in opposition to Aventura's motion. Nothing in the bylaws prohibit the spending of corporate assets on legal defense.)

14. Upon information and belief, Aventura's bylaws were amended by corporate resolution on or about July 28, 2010, which amendment predated this Indictment in this case and obligated Aventura to pay for the legal fees of authorized employees. Upon further information and belief, the hard copy of this resolution is in the possession of the government since the time it was seized from Aventura among its its corporate records and computers. Aventura's inability produce this document at this time does not damage Aventura's claim to the funds. The only impact the resolution will have (once found) will be to support a claim by an authorized Aventura employee for funding for legal fees for themselves.

15. Discovery in this case is enormous, well-beyond the normal boundaries of a white-collar case. It has been designated as a "mega" and "complex" case by the District Court due to the breadth and depth of the document production, the time span contemplated in the indictment, and the complexity of the law in question. The documents needed to defend Aventura maybe contained in the 3.5+ million pages already produced, and the next avalanche of documents to come, but Aventura and the individual defendants don't have the resources or the manpower to find them.

16. The government had a several-years head start on the defendants to review documents and prepare its case. Nonetheless, even with three AUSA's, numerous support staff, and the FBI to assist it, it has taken more than 12 months to produce this discovery and there is still more to be produced and reviewed.

17. Attached as Exhibit G, the government has indicated to counsel in its letter of January 11, 2022, that it has another production to make which includes: the corporate email server, 7 electronic devices, and forensic images of several dozen corporate computers (which the government does not believe contains relevant material but which the defendants must review). This might be 100,000 additional pages or 10 times that amount-until it is seen it can't be known.

18. Attached as Exhibit H are two invoices for Greenwood Law Group, and a ledger of already paid expenses for initial computer services to begin digesting the discovery provided. The outstanding invoices represent work already performed but unable to be paid as there are no funds to do so, and so the work of Greenwood Law Group has stopped until the outstanding invoices are paid. These total more than $10,000, but are merely the tip of an iceberg that cannot be accurately be measured at this point. As described in Aventura's initial motion is a proposal from Opentext, a document hosting and sorting platform, to assist defense counsel in this matter to review the millions of pages of discovery. The proposal would have a 12-month cost of $215,130, with additional costs for a second year of hosting (and there is no realistic chance that this matter will be tried in 2022 as the documents still need to be reviewed prior to motion practice and trial preparation.)

19. There is no ability of the individual defendants's counsel to review all the documents without a hosting program. (The government has its own, taxpayer funded, hosting

5

platform for discovery material.) If a defendant had three attorneys, working 40 hours a week each, doing nothing but reviewing the documents already provided in this case, at a rate of a page reviewed every 10 seconds, it would take 78 weeks to review every page. But since there aren't funds to pay for these lawyers, nor a document hosting program to allow for review of these documents, nor is it likely that documents can be reviewed in an average of 10 seconds each, it is impossible for the individual defendants and Aventura to review the documents provided in time for a trial. Further, the government's letter answer provides no solution to this problem.

20. The Fifth and Sixth Amendments to the United States Constitution require the accused be afforded due process and the right to effective services of counsel. The current situation in the instant matter thwarts both those rights.

21. If the individual defendants filed affidavits of indigency and were given counsel pursuant to the Criminal Justice Act, the same 78 weeks of 40 hours/week for nine lawyers at current CJA rates would be $1,478,880, *not including* the cost of the hosting platform for the documents.

22. This Court and the criminal justice system both have a vested interest in properly represented defendants being effectively represented in trials seeking to take their liberty and their assets. The requested funds are necessary to move this case towards a resolution (if one can be had) or to a trial, which cannot be achieved without funded counsel and a technological solution to the discovery problem.

23. If the Court ultimately does allow for the use of the seized funds for legal expenses, as the attorney for the corporation, I will hold the funds in my trust account and would provide to the Court *ex parte* an accounting of the use of those funds for legal expenses.

Respectfully submitted,

*[signature]*

Samuel M. Braverman, Esq.
Counsel for Aventura Technologies, Inc.