```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,
                                          MEMORANDUM AND ORDER
         -against-                        19-CR-0582(DRH)(ARL)

AVENTURA TECHNOLOGIES,INC.,
et al.,

              Defendants.
-------------------------------X

APPEARANCES ON THE MOTION:

For the Government:
    Breon Peace
    United States Attorney
    Eastern District of New York
    100 Federal Plaza
    Central Islip, New York 11722
      By: Alexander F. Mindlin, A.U.S.A.
          Ian C. Richardson, A.U.S.A.
          Claire S. Kedeshian, A.U.S.A.
          Kayla C. Bensing, A.U.S.A.

For the Defendant Aventura Technologies, Inc.:
    Samuel M. Braverman, Esq.
    Fasulo Braverman & Di Maggio, LLP
    225 Broadway, Suite 715
    New York, New York 10007
```

HURLEY, Senior District Judge

        Pending before the Court are the objections filed by Aventura Technologies, Inc. ("Defendant" or "Aventura") to the Report and Recommendations of Magistrate Judge Arlene R. Lindsay dated March 10, 2022 (DE 242)(the "R&R").

## Background

A. <u>Nature of Charges</u>

        By complaint dated November 6, 2019, Aventura was

charged with unlawful importation, a money laundering conspiracy, and two counts of conspiracy to commit mail and wire fraud. In the same complaint, seven of its corporate employees stand accused with various combinations of the same offenses.

The gravamen of the complaint is that Defendant sold merchandise for well over a decade, both domestically and abroad, falsely claiming that the products were American-made and by a woman-owned business, when in fact not all of the subject goods were made in this country and the operation was not controlled by its purported owner, defendant Frances Cabasso, but rather by her spouse and co-defendant, Jack Cabasso. It is also alleged that millions of dollars were diverted from corporate coffers to the personal use of the Cabassos.

B.  <u>Seizure Warrants Issued Against Aventura</u>

On November 6, 2019, i.e., the same date as the complaint, Magistrate Judge Vera M. Scanlon found probable cause to believe that many assets held by the multiple defendants – including two bank accounts held by Aventura totaling $1,874,791.48 - constituted forfeitable assets as property traceable to the charged criminality.

The seizure warrants against the two Aventura bank accounts were executed on November 7, 2019, with the monies seized deposited into interest bearing accounts.

Those accounts are the subject of the current motion,

next discussed.

C. Aventura's Motion and its Referral
   to Magistrate Judge Arlene R. Lindsay

By motion filed on August 11, 2021, Aventura "move[d] this Court pursuant to the Fifth and Sixth Amendments to the United States Constitution for an order releasing funds seized by the Government so that (1) Aventura can defend itself in the instant prosecution, and (2) Aventura can contribute to the defense expenses of its co-defendant corporate employees." (DE 211 at 2.) Towards that end, Aventura sought a hearing to separate "the seized assets into 'tainted'[1] and 'untainted' categories and to return the 'untainted' funds to Aventura immediately so that they may be used for its legal defense." (Defense Counsel's Jan. 26, 2022 Letter to Judge Lindsay (DE 232) at 2.)

D. Judge Lindsay's March 10, 2022 R&R

In Judge Lindsay's well-crafted R&R, she recommends that the requested hearing be denied because Aventura failed to satisfactorily demonstrate that, absent a release of the seized assets, it will be unable to retain counsel of its choosing. In concluding that this failure precludes a granting of the

---

[1] "Tainted" assets exist when there is probable cause to believe that a defendant has committed an offense permitting forfeiture and the subject assets are traceable to the crime charged. Kaley v. United States, 571 U.S. 320, 323-24 (2014).

requested relief, Judge Lindsay relied primarily on United States v. Bonventre, 720 F.3d 126 (2d Cir. 2013).

In Bonventre, Judge Walker, writing for the Circuit, explained that "if a defendant has sufficient unrestrained assets with which to fund his own defense," id. at 131, Sixth Amendment concerns are not implicated and thus a "Monsanto or Monsanto-like hearing"[2] is not warranted. Id. at 128.

Which is to say, Bonventre instructs that a "threshold showing" of need by the movant, id., is a prerequisite to the holding of the type of hearing Aventura seeks. It isn't that Aventura wholly ignored that requirement. However, its effort – consisting merely of a conclusory, unsworn statement by counsel as to the purported lack of otherwise available assets – was viewed by Judge Lindsay as "insufficient to comply with Bonventre which requires disclosure of [a] Defendant's net worth – including estimated income, a comprehensive list of all assets, an estimation of anticipated legal fees, and an explanation of how Defendant has been paying . . . operating expenses." (R&R at 5 (citing Bonventre, 720 F.3d at 133; FTC v. Star Resolution,

---

[2] "In United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991) (en banc), we held that the Fifth and Sixth Amendments entitle a criminal defendant seeking to use restrained funds to hire counsel of choice to an adversarial, pre-trial hearing at which the court evaluates whether there is probable cause to believe (1) that the defendant committed the crimes that provide the basis for the forfeiture; and (2) that the contested funds are properly forfeitable." Bonventre, 720 F.3d at 128.

4

LLC, 2016 U.S. Dist. LEXIS 24484 (W.D.N.Y. Feb. 29, 2016).)

E.  Aventura's Objection to Judge
    Lindsay's March 10, 2022 R&R

By letter dated March 24, 2022 (DE 245), Aventura objected to Judge Lindsay's R&R. In its April 25, 2022 reply (DE 252) to the prosecution's answer to its objection (DE 250), it identifies what it perceives to be the logical flaw underlying the government's position as adopted by Judge Lindsay thusly:

> [T]he Government continues to improperly conflate two separate issues: the financial need of a defendant to have access to seized funds to pay for legal services (the Monsanto question) with the Government's *duty* to prove to a court that the Government's seizure of assets pre-conviction is limited strictly to those assets [which] are tainted by underlying criminal conduct (the Kaley question.) . . . Aventura's motion seeks to put the Government to its burden to demonstrate to this Court that the money that the Government seized concurrent with the arrest of the defendants and which it continues to hold now was derived or is tainted by criminal conduct or it must be released to Aventura. The Supreme Court of the United States has repeatedly affirmed this due process right to a hearing in three consecutive decisions in the last decade and no case cited by the Government in its opposition overrules or distinguishes these controlling decisions.[3] The Government's continued bleating of the Monsanto question while ignoring the Kaley question led the Magistrate to make an erroneous decision, notwithstanding the number of times Aventura

---

[3] The three Supreme Court decisions referenced in Aventura's April 25, 2022 letter brief are Kaley v. United States, 571 U.S. 320 (2014); Luis v. United States, 578 U.S. 5 (2016); and Honeycutt v. United States, 137 S. Ct. 1626 (2017).

5

> repeatedly restated the issue to the
> Magistrate. Aventura is entitled under the
> United States Constitution to due process,
> regardless of how many times the Government
> says that it is not. It is up to this Court
> to ensure that procedural due process is
> provided so that substantive due process can
> be had.

(DE 252 at 1-2 (emphasis in original) (footnote omitted).)

The Court notes that absent from Aventura's procedural due process objection is any comment, no less discussion, about Judge Scanlon's pre-seizure probable cause determination and its effect on the present dispute.

F.  Government's April 7, 2022 Letter in Support of Judge Lindsay's R&R and in Response to Aventura's March 24, 2022 Objections to the R&R (DE 250)

The government urges this Court to adopt Judge Lindsay's recommendation, contending that United States v. Bonventre, 720 F.3d 126 (2d Cir. 2013) represents the prevailing, and repeatedly followed, law of the Circuit unaffected by the three Supreme Court decisions erroneously relied upon Aventura.

The prosecution recognizes that an indicted defendant "may seek a [pretrial] hearing 'to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable'" to the crime charged. (DE 250 at 4-5 (quoting Kaley v. United States, 571 U.S. 320, 324 (2014)).)[4] But, and this is

---

[4] Also not contested is the truism that if the subject assets are not so linked, i.e., not forfeitable, they should be returned to their owner.

the crux of the present dispute, the government insists that unless there is a threshold showing of need, no hearing is required under the Constitution as per Bonventre. (DE 250 at 5.)

F. Standard of Review

The standard of review that a district court applies to a magistrate judge's order "depends on whether the issue decided by the magistrate judge is dispositive or nondispositive." Blackrock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018)(internal citation omitted); see generally Kiobel v. Millson, 592 F.3d 78, 106 (2d Cir. 2010)(Jacobs C. J., concurring). Whereas dispositive orders are subject to de novo review, if a party timely objects to a magistrate judge's nondispositive order, a district court may only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A). A motion for the return of seized funds is a non-dispositive pretrial matter. See 28 U.S.C. §636(b)(1)(A) (a magistrate judge may determine "any pretrial matter pending before the court," with exception of enumerated dispositive motions.) Aventura's application does not fall within the ambit of any of the enumerated exceptions by implication or otherwise.

Because the subject order addressed a nondispositive motion this Court reviews Judge Lindsay's order for "clear

7

error." See Fed. R. Civ. P. 72, advisory committee's note to 1983 amendment. "This standard is highly deferential and only permits reversal where the magistrate abused his discretion." Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 204 (E.D.N.Y. 2010); accord AMBAC Fin. Servs. LLC v. Bay Area Toll Auth., 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010)(citation omitted). Under this standard, the question is whether the magistrate judge "fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure," Weiner v. McKeefery, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014), or, in entering a finding of fact, rendered a decision that leaves this Court "with the definite and firm conviction that a mistake has been committed," United States v. Isiofia, 370 F.3d 226, 232 (2d Cir. 2004). See also Alvarado v. City of New York, 2009 WL 510813 (E.D.N.Y. Feb. 27, 2019)("[A] magistrate judge's decision is contrary to law only where it runs counter to controlling authority."); Gordon v. Target Corp., 2016 WL 7264531, at *3 (E.D.N.Y. Dec. 15, 2016)("'[I]t is insufficient, upon appeal of a magistrate judge's ruling, to argue that other judges might have ruled' differently.") (quoting Lang v. Wal-Mart Stores, Inc., No. CV 15-2528 (E.D.N.Y. Jul. 16, 2015)(Slip Op.)).

## Discussion

1. Framing the Issue

   Title 21 U.S.C. § 853(e)(1) authorizes courts to issue

8

pretrial restraining orders to "preserve the availability of [forfeitable] property" while criminal proceedings are pending. Kaley v. United States, 571 U.S. at 322. Such an order passes constitutional muster "so long as it is 'based on a finding of probable cause to believe that the property will ultimately be proved forfeitable. . . .' [T]hat standard . . . appl[ies] even when a defendant seeks to use the disputed property to pay for a lawyer." Id. (quoting United States v. Monsanto, 491 U.S. 600, 615 (1989)).

To partially reiterate, the government urges the Court to adopt Judge Lindsay's recommendation and deny Defendant's motion whereas Defendant contends to do so would constitute grievous error because, in its view, Bonventre – upon which the government primarily relies and which is the cornerstone of the R&R[5] – is no longer good law in view of post-Bonventre Supreme Court decisions in Kaley, Luis and Honeycutt.[6] Given the focal point of the dispute, the Court's analysis will entail an examination of Kaley, Luis, and Honeycutt, the goal being to determine whether one or more of those Supreme Court decisions (a) abrogate the holding in Bonventre as Aventura contends, (b)

---

[5] As earlier indicated, Aventura also maintains, apparently alternatively, that to the extent a threshold showing of need is a legitimate prerequisite to the holding of the hearing it seeks, its attorney's affirmation satisfies that requirement.

[6] See note 3 supra, for concomitant cites.

9

dictate that the hearing demanded by Aventura should be granted, and (c) suggest that Judge Lindsay's recommendation to the contrary is clearly erroneous and must be rejected.

2. Kaley v. United States, 571 U.S. 320 (2014)

As Justice Kagan explained in delivering the Court's opinion: "The question presented is whether criminal defendants are constitutionally entitled . . . [to a post-indictment, pretrial] hearing to contest a grand jury's prior determination of probable cause to believe they committed the crimes charged." Kaley 571 U.S. at 322. The Court answered that limited query in the negative. The question before this Court involves a different subject, to wit, the connection between the seized funds and crimes charged and, more precisely, whether to trigger a hearing as to that issue, the accused must first demonstrate that, without the frozen assets, it will be financially unable to obtain counsel of its choice. As to that latter question which was not before them, the majority opinion in Kaley is understandably silent, neither mentioning Bonventre by name or discussing anything akin to its holding. Moreover, Aventura fails to explain how Kaley somehow casts doubt on the continued viability of the "threshold showing" portion of Bonventre.

Bonventre is mentioned, however, in the Kaley dissent in response to the majority's concerns that a re-do of a grand jury's probable cause determination raises the specter of a "pre-

10

trial mini-trial (or maybe a pre-trial not-so-mini-trial)" in multiple cases and a corresponding "consum[ption of] significant prosecutorial time and resources."  Kaley, 571 U.S. at 339.  Addressing that concern, the dissenting Justices proffer by way of retort that "experience in the Second Circuit, where defendants have for more than 20 years been afforded the type of hearing the Kaleys seek, indicates that such hearings do not occur so often as to raise substantial concerns about taxing the resources of the Government and lower courts . . . ."  [7] Kaley, 571 U.S. at 353-54 (Roberts, C.J. dissenting) (citing Bonventre, 720 F.3d at 131).

In maintaining that Kaley, along with Luis and Honeycutt, have implicitly invalidated Bonventre's long-standing "need" prerequisite, Aventura focuses on judicial statements, the accuracy of which are not in dispute, such as the following observation from the majority opinion in Kaley that "lower courts 'have uniformly allowed the defendant to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment,' and that the Government 'agreed that a

---

[7] Tellingly, Chief Justice Roberts in describing the Second Circuit experience notes in his dissent that for a defendant "[t]o even be entitled to a hearing, [he] must first show a genuine need to use the assets to retain counsel of choice." Kaley, 571 U.S. at 353 (Roberts, C.J. dissenting) (citing Bonventre, 720 F.3d at 131).

11

defendant has a constitutional right to a hearing on that question.'" (DE 211 at 2 (quoting Kaley, 571 U.S. at 324 & n.3).)

In sum, Kaley involved a different issue than the one at bar. Aventura fails to satisfactorily explain how it renders Bonventre no longer controlling law in the Second Circuit or how it is otherwise relevant for present purposes.

The focus will now be shifted to Luis and Honeycutt. Do either of those two cases — viewed alone, together, or in conjunction with Kaley — show that Aventura is entitled to the relief requested?

   3. Luis v. United States, 578 U.S. 5 (2016)

The Supreme Court in Luis addressed the question of whether the government could constitutionally seize pretrial assets stipulated to be untainted, i.e. not linked to the defendant's alleged crimes, in an effort to assure that adequate funds would be available to compensate victims in event of a conviction. A plurality of the Court, in an opinion by Justice Breyer, held "that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." 578 U.S. at 10.

The cases upon which the government relied in Luis in urging a different result were found to be less than convincing because they involved tainted assets, title to which

conditionally vests in the government upon the commission of the crime unlike in Luis where the defendant was, and remained, the owner of the subject property throughout.

Luis, like Kaley, did not involve, nor discuss the issue before this Court, namely, whether the post-Bonventre Supreme Court decisions cited by Aventura abrogate its holding, thus nullifying the financial need requirement operative in the Second Circuit.

Nevertheless, Luis has some tangential relevance for present purposes because in framing the answer to the question that was before it, the Supreme Court held "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment."  Id. at 10 (emphasis supplied).  So it seems the defendant in Luis may have made a financial need showing in the lower court.  Be that as it may, however, Luis does not provide credence to the proposition that a showing of "need" is now analytically irrelevant.

    4.   Honeycutt v. United States, 137 S. Ct. 1626 (2017)

The Supreme Court "granted certiorari to resolve disagreement among the Courts of Appeal regarding whether joint and several liability applies" to the forfeiture provisions set forth in 21 U.S.C. § 853.  Honeycutt, 137 S. Ct. at 1631.

As explained in Luis – and noted in Honeycutt — criminal forfeiture statues only pertain to tainted assets.

13

Since all of the property derived from the criminal conduct in Honeycutt was concededly traceable solely to his co-conspirator – meaning that the defendant possessed no tainted assets — the government's efforts to obtain a post-conviction judgment against him under a joint and several liability theory were rejected by the Court as beyond the reach of the controlling statute.

A perusal of Honeycutt, as was true of the same exercise vis-a-vis Kaley and Luis, fails to clarify its relevance for present purposes and Aventura's submission do not cure that shortcoming.

And like in Kaley and Luis, Bonventre's threshold showing of financial need is totally unaddressed in Honeycutt either by reference to the Second Circuit case or to the rationale underlying its holding.

## Conclusion

The present dispute is not whether a defendant in need of frozen assets to retain counsel of his, her, or, in this case, "its" choice, is constitutionally entitled to a pretrial hearing intended to separate tainted assets from their untainted counterparts with the restraint to be lifted as to the latter. Under settled law, that question calls for an affirmative answer, as readily acknowledged by the government. (DE 250 at 5-6.)

Whether the modifier, viz. "needed to retain counsel . . . ," should remain as part of the analytical framework or be

stricken to appropriately frame the present issue is the pivotal inquiry.

By way of a synopsis, Aventura says striking is in order, arguing that Bonventre – and its threshold showing of financial need — is no longer good law given the Supreme Court's decision in Kaley, Luis, and Honeycutt. As explained, supra, that argument has been found to be unconvincing. What remains is whether Aventura has satisfied the financial need prerequisite to the holding of a Monsanto hearing. Aventura say it has, noting that the proof required to meet the threshold is minimal. But "minimal" does not equate with essentially non-existent. Defense counsel's January 27, 2022 Affirmation (DE 232-2) – some of which is upon information and belief absent a sufficient identification of the source of the information or basis for the belief — clearly fails to hit the mark for the reasons provided in the R&R. (See DE 242 at 3-6.)

The Court is aware that Defendant contends that a more robust effort to satisfy the threshold showing requirement was not possible given that the prosecution seized relevant records. To the extent that is the case, a discovery request to the Court rather than a facially deficient submission seemingly would have been the proper course of action.

For the reasons set forth above, the Court rejects Aventura's objections and adopts Judge Lindsay's R&R. As a

result, Defendant's motion for an evidentiary hearing requiring the government to establish probable cause (in addition to Judge Scanlon's determination) for its pretrial seizure of corporate assets is denied.

    SO ORDERED.

Dated: June 14, 2022
      Central Islip, New York

                                      /S
                               DENIS R. HURLEY, U.S.D.J.